Annabell **BRIDGFORD**, Appellant,

v.

Robert Lynn **BUTTERCASE** and Margie Ann Buttercase, Respondents,

Federal Land Bank of St. Louis, Defendant.

No. 25279.

Kansas City Court of Appeals, Missouri.

Feb. 2, 1970.

Henry C. Copeland, Rock Port, for appellant.

Walter L. Mulvania, Rock Port, for respondents.

JAMES W. BROADDUS, Special Commissioner.

On February 29, 1968, plaintiff, Annabell Bridgford, filed her petition in which she sought partition of certain lands located in Atchison County, Missouri. From the decree rendered therein she has appealed.

The plaintiff and her husband, J. R. Bridgford, were the parents of the defendant Margie Ann Buttercase.

In 1961, the real estate which is the subject of this action was offered for sale by the Executor of the Estate of Mary A. Hosfiel, deceased. The defendants, Robert Lynn Buttercase and Margie Ann Buttercase, were tenants of Mary A. Hosfiel before her death and decided that they would like to buy the farm. However, as they had only saved the sum of $1,000 and, as that was all the money they had to put up as a down payment, they sought financial help from the Bridgfords in order to secure the required down payment. The defendants, Mr. and Mrs. Buttercase, went to the Bridgford home. There, as related by Mrs. Buttercase, "we talked about the estate being sold. That was the place where we had been living at the time, and my father, Mr. Bridgford, said he would like to see us have the farm as a home. He said he would try to help us buy it." As a result the Bridgfords paid the sum of $5,000 on the total purchase price of $12,-000. The $5,000 together with the $1,000 put up by the Buttercases made a total

down payment of $6,000 or one-half of the $12,000 cost of the farm. All of this was done on June 22, 1961, in the office of Walter L. Mulvania in Rock Port, Missouri. At that time a note and a deed of trust were given to the Federal Land Bank of St. Louis by the Buttercases to secure the loan made for the balance of the purchase price of the farm. The original Executor's deed was made to the Buttercases only and, when an objection was raised by Mrs. Bridgford because "they didn't have anything to show for their $5,000", a quitclaim deed was given to the Bridgfords for an undivided one-half interest in the land, which deed was also dated June 22, 1961.

The Bridgfords and the Buttercases have owned the real estate as tenants in common since the date of June 22, 1961, and have operated the farm on a landlord-tenant relationship since that time.

On December 20, 1966, Mr. Bridgford died leaving his widow, the plaintiff, as the sole owner of their undivided one-half of the real estate.

The evidence disclosed that at the time of the purchase the buildings on the farm were in "bad shape and in need of repairs." Mr. Buttercase described in detail the improvements that were made on the farm. He gave the cost of these improvements at "approximately $5,000." His testimony to that effect was supported by the testimony of Mr. Deene Fisher and Mr. Willard Grebe. The latter had lived in the immediate neighborhood for many years and both men were experienced farmers.

The trial court found that the plaintiff and the defendants are the owners as tenants in common of the real estate here involved.

The court further found that the Federal Land Bank is the mortgagee in a deed of trust duly recorded in the Deed of Trust Records of Atchison County, Missouri, and that said encumbrance is a first lien upon all the real estate involved.

The court further found that "upon the claim of the plaintiff for reimbursement in whole or in part for the $5,000 which the plaintiff and her husband paid to the defendants Robert Lynn Buttercase and Margie Ann Buttercase as the purchase price for an undivided one-half interest in the real estate that there was no agreement in fact between the parties for reimbursement to plaintiff and her deceased husband for the payment of such purchase price, but that in truth and in fact it was there intended that plaintiff and her husband own an undivided one-half interest in said real estate and that the defendants Robert Lynn Buttercase and Margie Ann Buttercase own an undivided one-half interest in said real estate, all subject to the encumbrance to the Federal Land Bank of St. Louis."

The court also found "that with the knowledge and implied consent of the said James R. Bridgford and Annabell Bridgford the said defendants Robert Lynn Buttercase and Margie Ann Buttercase did in good faith make lasting repairs and improvements upon said premises in the nature of permanent repairs to the dwelling house, grain bins, out-buildings and permanent fencing, all of which were of the cost and value and enhanced the value of said real estate in the amount of $3,000."

Plaintiff contends that "the court erred in finding that there was no agreement for reimbursement to the plaintiff and her late husband since such an agreement should have been inferred."

That there was no such agreement was shown by plaintiff's own testimony. The Court inquired of her as follows: "Now, I am asking you—you are going to tell me about something that took place prior to the 22nd day of June, 1961. Now I want to know how long, as best you can, how long prior to that this was? In other words, was it the day before, the night before, or the year before? The Witness: Probably a couple of weeks. The Court: All right. And where was it? The Wit-

ness: Well, it was at home at my place. The Court: Your home? The Witness: Yes. The Court: And who was present? The Witness: Lynn, Margie, Dick and I. They decided to buy the farm together. The Court: Tell us what was said at that time now, and who said it? The Witness: Well, my husband said he would buy a half interest in it and Lynn would buy a half interest, and that's the way it was. The Court: That's what was said there at that time? The Witness: Yes."

■ Plaintiff cites cases holding that a tenant in common who purchases or discharges an outstanding title or encumbrance for the benefit of the common estate, is, in the absence of any agreement or understanding to the contrary, entitled in equity to contribution from his co-tenants. The plaintiff did not pay off or discharge an indebtedness for the benefit of a co-tenant. The parties were not co-tenants at the time the deed of trust was given. In effect, the plaintiff is asking the court to find that she has a vendor's lien or right to distribution or that she has a resulting trust in her favor from the proceeds of the sale of the lands which is superior to that of the lien of the Federal Land Bank. Under the facts of the instant case there was no agreement whatsoever between the parties except that the defendants should deed a one-half interest in the land in consideration of the advancement that was made, all subject to the deed of trust that had been previously given. In accepting the deed from the defendants, the plaintiff and her deceased husband accepted this conveyance in consideration of their advancement. This is the logical conclusion to be given the facts as stated by the plaintiff.

The evidence clearly shows that it was the intention of the parties that the plaintiff and her husband wanted to benefit the daughter and son-in-law by making it possible for them to purchase the farm in question in 1961 and that they were willing to accept a conveyance from the defendants of a one-half interest in the real estate. No complaint was made by them at that time that they should have any additional rights in the lands. They accepted the deed as the consideration and recorded it.

■ An equitable lien for advances may exist where advancements of money or funds are made on the faith of certain property, real or personal, under an agreement or circumstances show that it was the intention of the parties to pledge such property as security for the advancement, provided the specific property or its proceeds on which the advancements were invested can be traced or identified. However, in 53 C.J.S. Liens § 4c (3), it is stated that:

"In the absence of such contract or circumstances, advances made by one person to another, although constituting a personal debt, do not give a right to an equitable lien. Thus, in the absence of an express or implied agreement therefor, the fact that one of two or more purchasers has paid more than his share of the purchase price does not give him an equitable lien on the property for the excess; nor does the mere fact that one person advances money to another which enables the latter to purchase property give the former an equitable lien for his advances on the property when purchased."

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.